UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11861-RGS

DARWIN GOMEZ

v.

LOUIS DEJOY, POSTMASTER GENERAL OF THE UNITED STATES
POSTAL SERVICE

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

November 29, 2021

STEARNS, D.J.

Plaintiff Darwin Gomez brought this action against Louis DeJoy, the Postmaster General of the United States, alleging that the United States Postal Service discriminated against him based on disability and national origin when it rejected his applications to become a postal employee. Gomez asserts three counts against Postmaster DeJoy: handicap discrimination (Count I) and failure to accommodate (Count II) under the Rehabilitation Act, 29 U.S.C. § 794; and national origin discrimination (Count III) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.   Postmaster DeJoy moves for summary judgment on all three counts. For the following reasons, the court will allow the motion.

## BACKGROUND

In late 2018, Gomez began his quest for employment with the Postal Service. Historically, the Postal Service offered alternative channels for the hiring of new carriers and clerks with disabilities. The first, which is still used by the Postal Service, is a competitive process that requires all applicants to submit an online application. Any apparently qualified applicant is sent a link to a non-proctored Virtual Entry Assessment (VEA), the April 1, 2019 successor to the previous the two-part Battery 473 examination.[1] An accommodations version of the postal exam is made available to applicants with qualified disabilities. Applicants who pass the exam are placed on a register of eligible external hires. A disabled candidate is then invited to participate in an interactive interview to determine the reasonable accommodations the Postal Service could implement if it offered the applicant a job.

A second, noncompetitive hiring process, which is no longer in effect, involved collaboration between the Postal Service and state divisions of vocational rehabilitation (DVR) or veterans' affairs (VA) organizations.[2]

[1] The court refers to both exams as the "postal exam."

[2] Although the Postal Service has not hired through the noncompetitive process in at least ten years, the Postal Service's Handbook

2

Any DVR or VA organization that wished to participate in the noncompetitive process was required to submit a certification package. If approved, these organizations and agencies identified potential applicants to the Postal Service. If a postal position became available, the Postal Service would request that the recommending agency certify at least three names for the Postal Service's consideration after conducting a worksite evaluation.

Gomez was born in Colombia and migrated to the United States approximately a decade ago. He has longstanding diagnoses of epilepsy, anxiety, depression, and a cognitive disorder that affect his ability to retain employment. In June of 2011, Au Bon Pain, a bakery chain, hired Gomez to work as a guest services representative at one of its Boston, Massachusetts locations. Au Bon Pain dismissed Gomez in March of 2012, after he missed work following a series of seizures. In November of 2016, Gomez began working as a food delivery driver for Grubhub Holdings, Inc. In 2018, he left Grubhub and began driving for rideshare companies Uber Technologies, Inc. and Lyft, Inc. Gomez stopped driving for Uber and Lyft upon the onset

---

EL-312, *Employment and Placement*, still describes the noncompetitive hiring process and states that it may be available to individuals with severe disabilities for whom "the competitive process is itself a barrier to employment" and who "would be able to perform at the normal standards of job performance." Tayler Aff. Ex. 14 (Dkt # 18-14) at 60.

of the COVID-19 pandemic.

On October 15, 2018, Gomez emailed Postal Service employee Nicolas Francescucci inquiring about employment as a postal worker. In his email, Gomez asked how he could qualify for "a Noncompetitive selection." Taylor Aff. Ex. 6 (Dkt. # 18-6) at 8. Postal Service Learning, Development, and Diversity Specialist Carmen Filleti reached out to Gomez by return email on January 11, 2019. She explained that her job was to assist persons seeking employment with the Postal Service. Filleti asked Gomez for his telephone number and whether he intended to take the postal exam. Gomez replied that he needed "to request and [sic] accommodation in the hiring process," and asked Filleti "what documents [he] should submit to obtain a noncompetitive selection." *Id.* at 15. Filleti forwarded Gomez's email to Donna Pratt, the Manager of Human Resources in the Postal Service's Greater Boston District, who contacted Postal Service employee Angela Corbett regarding Gomez's request. Corbett informed Pratt that Filetti was the proper person to assist Gomez in navigating the application process.

In an email dated February 12, 2019, Pratt advised Gomez to submit a formal application indicating that he required an accommodation. The Postal Service assigned employee Mario Lucas to guide Gomez after he

applied for the position of City Carrier Assistant in Brockton, Massachusetts. Gomez, however, did not take the postal exam, and, on February 19, 2019, the Postal Service notified him that he would not be considered for the City Carrier Assistant position.   It further informed Gomez that he could apply for a different vacancy after June 16, 2019.

Undeterred, Gomez continued his pursuit of immediate employment with the Postal Service.   On February 22, 2019, he presented Lucas with two letters from his psychiatrist: one dated October 17, 2018, certifying that he suffers from conditions that affect his ability to perform on a test, and another stating that he "suffers from medical conditions that create significant anxiety in the context of a job interview" and "would benefit from the interview being conducted in Spanish and from being given increased time for answering questions during the interview."   Taylor Aff. Ex. 24 (Dkt. # 18-24) at 2–3.   That same day, Gomez, with Lucas's assistance, applied for a clerk's position at post offices in North Easton and Abington, Massachusetts.   On February 23, 2019, the Postal Service notified Gomez that he did not meet the "eligibility or suitability requirements" for either of these positions.   Taylor Aff. Ex. 3 (Dkt. # 18-3) at 41–42.

On March 20, 2019, Gomez emailed Human Resources Manager

Pratt asking how, despite his being deemed ineligible for the positions he had sought, he could nonetheless continue with the application process.   Pratt sought guidance from others in the Postal Service's Human Resources Department as to whether Gomez could be considered as a new hire without first completing the postal exam.   On March 27, 2019, Gomez followed up with Pratt about continuing with the hiring process, stating his belief that he was "exempt from taking the test."   Taylor Aff. Ex. 31 (Dkt. # 18-31) at 3. On April 4, 2019, Pratt informed Gomez that his application had been rejected "as you did not complete the test."   *Id.* at 1.   Nonetheless, Pratt told Gomez that she had asked her staff to continue providing him with assistance, and offered to schedule a meeting for Gomez with the Boston District's Reasonable Accommodation Committee.   She stated that she understood his request to be exempted from taking the postal exam as a request to be hired noncompetitively, and continued:

> We mostly hire employees with disabilities from a competitive hiring register.   We only hire non-competitively when the individual has been referred (via PS Form 3666 [linked]) by a certified state DVR or VA organization that we've granted authority to identify and screen applicants.   Are you working with a State Disability Agency?   If so, they must complete the attached form on your request.

*Id.*   Gomez replied that he would work with a State Disability Agency to

complete the Form 3666.

On April 8, 2019, Pratt followed up with Gomez providing a further clarification of the hiring process.   She offered a lengthy overview of the noncompetitive hiring process, explaining that the process began with a DVR or VA organization seeking certification "before a hiring need exists." Taylor Aff. Ex. 3 (Dkt. # 18-3) at 36.   After explaining the DVR and VA organizations' roles in the noncompetitive process and how the Postal Service chose from the candidates they identified, she added:

> As you can clearly see, the non-competitive process is involved and strictly regimented.   Much needs to have happened prior to an agency referring you to the Postal Service for your consideration in a vacancy.   Now, if we were to consider you *competitively* with the understanding that you require reasonable accommodation, that process would be less involved and streamlined.   We would still require that you participate in an interactive interview to confirm the essential functions of the job, your abilities and your limitations before any offer of a job . . . . If you still wish to accept my suggestion and competitively pursue employment with the Postal Service, we would be happy to schedule the interactive interview and meet with you.   Please respond in writing to my address below at your earliest convenience.

*Id.*

On May 2, 2019, Gomez replied to Pratt's April 4 email and April 8 letter.   He asked "to schedule an interactive interview where we can meet and further discuss the hiring process with reasonable accommodations."

Balakrishna Aff. Ex. 4 (Dkt. # 17-4) at 1.    He added that he was working with a rehabilitation counselor named Mary Ramos in the Massachusetts Rehabilitation Commission's Brockton office.    On June 12, 2019, Ramos emailed Pratt a completed Form 3666, Certification of Postal Service Employment of Individuals with Severe Disabilities, which stated that Ramos had "reviewed both the job requirements and the job site" for a Postal Service position in Brockton, Massachusetts.    She certified that Gomez was qualified for the position and could meet or exceed the normal job performance standards but was "unable to successfully compete in the Postal Service competitive process because of the nature or severity of [his] disability."    Taylor Aff., Ex. 36 (Dkt. # 18-36) at 2.    Pratt, who was then on medical leave, forwarded Ramos's email and follow-up emails from Gomez to Learning, Development, and Diversity Specialist Filleti.    On June 25, 2019, Filleti informed Connie Marvin, the USPS Manager of Labor Relations, that Pratt had been working with Gomez and that he was requesting an exemption from the examination requirement.

On August 1, 2019, Marvin sent Gomez a letter advising him to pursue employment with the Postal Service through the competitive process.    She told Gomez that "[t]he Postal Service currently does not hire non-

competitively for any position," and that the section of the Postal Service's *Employment and Placement* handbook on noncompetitive hiring was obsolete.   Taylor Aff. Ex. 3 (Dkt. #18-3) at 37.   Marvin then explained that the competitive application process was more streamlined and, while it would require Gomez to take the postal exam, he could "access an accommodation version of the assessment."   *Id.*   She added that if Gomez were eligible, the Postal Service would schedule him for an interactive interview to determine reasonable accommodations.   She concluded, "[i]f you still wish to pursue employment with the Postal Service, we would be happy to schedule the interactive interview and meet with you.   Please respond in writing to my address below at your earliest convenience."   *Id.* Marvin did not receive a reply.

Gomez contacted the Postal Service's Equal Employment Opportunity (EEO) Office on August 12, 2019, and filed an EEO complaint on November 22, 2019, alleging disability and national origin discrimination.   On July 20, 2020, the EEO issued a final decision on Gomez's claims, finding that the Postal Service had not taken any discriminatory actions against Gomez. Gomez filed this Complaint on October 15, 2020.

## DISCUSSION

9

"Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 20–21 (1st Cir. 2018); *see also* Fed. R. Civ. P. 56(a).   An issue of material fact is genuine if a rational factfinder could resolve it in favor of either party.   *See Boudreau v. Lussier*, 901 F.3d 65, 71 (1st Cir. 2018).   "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).   Once accomplished, the burden then shifts to the nonmoving party to "adduce specific, provable facts demonstrating that there is a triable issue."[3] *Id.*

### a. Count I: Handicap Discrimination

Gomez claims in Count I that he was "denied employment due to his disability and his requested accommodations as a result of said disability." Compl. ¶ 24 (Dkt. #1).   The parties focus almost their entire briefing on Gomez's allegation that the Postal Service failed to provide him with a

---

[3] The parties are in almost complete agreement regarding the material facts of this case.   Gomez admits the substance of all but one paragraph of Postmaster DeJoy's Statement of Material Facts and submits a two-paragraph Statement of Material Facts of his own — which Postmaster DeJoy also does not substantively contest — stating that he is disabled and receives treatment for his disabilities.

reasonable accommodation, which Gomez more fully asserts in Count II of the Complaint.   Nonetheless, Gomez appears in Count I to raise a separate claim that the Postal Service failed to hire him as a matter of disability discrimination.   The court considers the discrimination claim as the substantive claim of Count I and grants summary judgment to Postmaster DeJoy.

To make out a prima facie case of disability discrimination, Gomez must show: (1) that he was disabled within the meaning of the Rehabilitation Act; (2) that he was qualified to perform the essential functions of the jobs to which he applied, either with or without a reasonable accommodation; and (3) that the Postal Service took an adverse action against him (in this case, by failing to hire him) because of his disability.   *See Rios-Jimenez v. Principi*, 520 F.3d 31, 41 (1st Cir. 2008).   If Gomez makes this preliminary showing, the burden shifts to Postmaster DeJoy to articulate a legitimate, non-discriminatory reason for the decision not to hire Gomez, and must produce credible evidence supporting that reason.   *See Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 99 (1st Cir. 2007); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   If Postmaster DeJoy meets his burden of production, the burden shifts back to Gomez to establish

11

"that the proffered reason is pretext intended to conceal discriminatory intent."   *Rios-Jimenez*, 520 F.3d at 41.

Gomez has failed to meet the low threshold requirement of establishing a *prima facie* case of handicap discrimination, for the simple reason that there is no triable issue as to whether he was able to perform the essential functions of a postal carrier or clerk.   To show that Gomez was not qualified to perform the essential functions of these positions, Postmaster DeJoy must prove that the job functions at issue are essential.   *See Lang v. Wal-Mart Stores East, L.P.*, 813 F.3d 447, 454 (1st Cir. 2016).   An essential function is any "fundamental" job duty rather than a "marginal" task.   *Kvorjak v. Maine*, 259 F.3d 48, 55 (1st Cir. 2001).   Once the essential job functions are established, Gomez bears the burden of showing that he possesses "the requisite skill, experience, education and other job-related requirements for the position," and that he is "able to perform the essential functions of the position with or without reasonable accommodation."   *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006).

Whether a job function is essential is ordinarily (but not always) a jury question to be decided by considering federal guidelines giving weight to the employer's judgment, the written job description, the amount of time spent

performing the function, the consequences if the function is not performed, the terms of any collective bargaining agreement, and what other past and present employees have done performing the same job.   *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 823 n.13 (1997) (adopting federal guidelines).   Here, Gomez does not contest the fact that he cannot meet the essential functions of a postal carrier or clerk position without an accommodation and, more important, as is explained, he did not meet the threshold qualification of successfully completing the postal exam.   Gomez admits that he did not successfully complete the exam, but instead seeks to be excused from taking the exam even though he did not avail himself of the accommodations version of the exam.   Under these circumstances, no reasonable jury could find that Gomez meets even the first of the essential requirements to qualify as a carrier or clerk.   Gomez has thus failed to make a *prima facie* showing that he was qualified to perform the essential functions of the carrier and clerk positions.

### b. Count II: Failure to Accommodate

Gomez alleges that the Postal Service discriminated against him in the hiring process when it refused to waive the exam requirement or hire him noncompetitively.   To assert a failure to accommodate claim, Gomez must

establish: (1) that he suffered from a disability; (2) that he was a qualified to perform the essential functions of those positions for which he applied, either with or without a reasonable accommodation; and (3) that, despite its knowledge of Gomez's disability, the Postal Service did not offer a reasonable accommodation. *See Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 20 (1st Cir. 2004).

A plaintiff bears the burden of showing that "(1) the proposed accommodation would enable [him] to perform the essential functions of [his] job, but also that, (2) at least on the face of things, it is feasible for the employer [to offer the accommodation] under the circumstances." *Echevarría v. AstraZeneca Pharm. LP*, 856 F.3d 119, 127 (1st Cir. 2017). The reasonable accommodation requirement does not mandate that an employer "automatically give [an applicant] the position," *Feliciano v. State of R.I.*, 160 F.3d 780, 787 (1st Cir. 1998), nor does it compel an employer to "give an employee [his] preferred accommodation," *Oquendo v. Costco Wholesale Corp.*, 857 F. App'x 9, 12 (1st Cir. 2021). An employer is not required to "create a new job for an employee, nor to re-establish a position that no longer exists." *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 27 (1st Cir. 2001). The First Circuit has expressly held that the Postal Service need

14

not satisfy a request for an accommodation that would violate the rights of other employees under an existing collective bargaining agreement (CBA). *See Shea v. Tisch*, 870 F.2d 786, 790 (1st Cir. 1989).

Gomez's request to be hired noncompetitively and be exempted from completing the postal exam is not facially reasonable.   Gomez does not dispute that, at the time of his applications, the Postal Service was only hiring for external bargaining unit positions through a competitive process that required each applicant to take the postal exam; rather, he argues only that the Postal Service failed to apprise him of this fact.   *See* Combined Statement of Material Facts (Dkt. #33) ¶¶ 11–13.   It is true that the Postal Service did not expressly foreclose the possibility that Gomez could be hired noncompetitively until Manager of Labor Relations Marvin's August 1, 2019 letter.   However, Human Resources Manager Pratt's communications of April 4 and April 8, 2019, informed Gomez that the Postal Service hired employees with disabilities competitively, that the competitive process was less involved and more streamlined than the noncompetitive process, and that the Postal Service was willing to engage in an interactive dialogue with Gomez to determine what reasonable accommodations he would need to pursue employment competitively.   Further, Gomez does not point to any

authority suggesting that his preferred accommodations (not taking the exam and being hired noncompetitively) are facially reasonable merely because the Postal Service did not immediately reject them.

Moreover, noncompetitive hiring is not a facially reasonable accommodation where, as here, it would violate the Postal Service's CBAs. *See* Marvin Decl. ¶ 7.   Gomez does not dispute the Postal Service's contention that the hiring of any external applicant into a career position as a postal worker is a CBA violation.   *See* Combined Statement of Material Facts ¶ 6; *see also Shea*, 870 F.2d at 789 *(*the court "must take it as established that to provide plaintiff with the accommodation plaintiff seeks . . . . would violate the collective bargaining agreement" and was therefore not a reasonable request).

### c.  Count III: National Origin Discrimination

Gomez submits no facts and makes no legal arguments in support of his national origin discrimination claim.   To make out a *prima facie* case of national origin discrimination, Gomez must show: (1) that he is a member of a protected class; (2) that he applied for and was qualified for the positions at issue; (3) that the Postal Service rejected his application; and (4) that the Postal Service hired someone with similar or lesser qualifications.   *See*

*Moron-Barradas v. Dep't of Educ. of Commonwealth of Puerto Rico*, 488 F.3d 472, 478 (1st Cir. 2007).   Postmaster DeJoy contends that Gomez has failed to establish the second and fourth elements of a *prima facie* case. The court agrees that Gomez was not qualified and that he has not shown that the Postal Service hired someone with similar or lesser qualifications than himself (ultimately for a discriminatory reason based on Gomez's national origin).   Indeed, Gomez has submitted no evidence from which the court could determine the ethnicity or origins of who, if anyone, was hired in his stead for the positions for which he applied.

## ORDER

For the foregoing reasons, the motion for summary judgment is ALLOWED in its entirety.   The Clerk will enter judgment for Postmaster DeJoy on all claims and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE